IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW MEXICO

SANTA FE DIVISION

FILED
01 JAN 18 AM 10: 53

| | |
|---|---|
| FIRST SECURITY BANK OF SOUTHERN NEW MEXICO, N.A., personal representative of the ESTATE OF MARY KATE NIELSEN, deceased,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>) CIV<br>) CASE NO. 99-1298 MV/DIS<br>)<br>)<br>)<br>)<br>)<br>) |

**UNITED STATES OF AMERICA'S**
**PROPOSED FINDINGS OF FACT/CONCLUSIONS OF LAW**

The United States of America files its Proposed Findings of Fact/Conclusions of Law with respect to the trial in the aforementioned case and states as follows:

PROPOSED FINDINGS OF FACT

1.  The decedent, Mary Kate Nielsen, was married three times, to Mr. Barker, Mr. Marquess, and her husband at the time she died, John Nielsen.

2.  During her marriage to Mr. Barker she had two daughters, Linda Barker, now known as Linda Casburn, and Adel Eliason.

3.  The deceased received a substantial inheritance from Mr. Barker, the Barker Farm, which she wanted to pass on to her daughters after her death.

4.  In 1979 Mary Kate Marquess married John Nielsen. In anticipation of this marriage, the decedent created the Mary Kate Marquess Revocable Trust on September 30, 1977 ("Revocable

1



Trust").

5. According to Article VII of the Revocable Trust document, the purpose of the trust was to pay its income to Mrs. Nielsen and upon her death, to distribute the corpus to her brother, maid, and two daughters.

6. On July 12, 1979, Mrs. Nielsen amended Article VII of the Revocable Trust to add John Nielsen as a beneficiary upon Mrs. Nielsen's death.

7. On March 18, 1981, Mrs. Nielsen amended Article VII of the Revocable Trust again, this time increasing the gifts to the trust beneficiaries and providing that John Nielsen would have the right to reside at the marital residence for one year after Mrs. Nielsen's death.

8. On February 4, 1988, Mrs. Nielsen amended Article VII of the Revocable Trust for the third time by increasing the amount of money to be paid to John Nielsen upon her death, and requiring the trustee of the Revocable Trust to distribute $600,000 to a trust to qualify as qualified terminable interest property ("QTIP").

9. On August 23, 1993, Mrs. Nielsen executed the fourth and final amendment to the Revocable Trust and also created the Irrevocable Mary Kate Nielsen Lifetime QTIP Trust (hereafter, "Lifetime Trust").

10. In the fourth amendment, Mrs. Nielsen revoked the portion of Article VII of the Lifetime Trust relating to the life estate for John Nielsen.

11. On the same day, Mrs. Nielsen made an inter-vivos transfer of $550,000.00 in securities to the Lifetime Trust (the "Transfer").

12. Article IV of the Irrevocable Trust document states:

**By this agreement Grantor intends to, and does hereby, relinquish absolutely and forever all possession or enjoyment of, or right to the trust property, or the income therefrom, whether directly, indirectly, or constructively, and any interest of any nature, future or present, vested or contingent, in the trust property.**

13. The Lifetime Trust document that the income generated by the $550,000 would be disbursed to John Nielsen during his life, and upon his death the remainder would be distributed to Mrs. Nielsen's two daughters.

14. Because Mrs. Nielsen transferred only a lifetime income interest to her husband, and not a fee interest in the Transfer, in order to apply the marital deduction to the Transfer, pursuant to I.R.C. §§ 2523(b) and 2523(f), Mrs. Nielsen was required to file a Form 709 Gift Tax Return for 1993.

15. Pursuant to I.R.C. § 6075(b), this gift tax return for 1993 was due by April 15, 1994.

16. Mrs. Nielsen did not file a timely Gift Tax Return for 1993.

17. On August 26, 1993, the First National Bank of Dona Ana County, as trustee of the Lifetime Trust, filed its application and was issued employer identification number 85-6110268.

18. In accordance with the trust document and Mrs. Nielsen's wishes, in 1993, the Irrevocable Trust began disbursing its income to John Nielsen.

19. The Lifetime Trust has filed its Form 1041 income tax returns for 1993 and all subsequent years.

20. Mr. and Mrs. Nielsen reported the income earned by the Lifetime Trust during 1993 on their 1993 Form 1040 income tax return.

21. Mr. Nielsen reported the income that the Lifetime Trust paid him during 1994 on his 1994 Form 1040 income tax return.

22. Mrs. Nielsen died on July 21, 1994. In accordance with her wishes, the Lifetime Trust has generated over $217,000 in income–all of which has been disbursed to John Nielsen over the last seven years.

23. The Estate was required to file a Form 706 Federal Estate Tax Return. Upon reviewing the Estate Tax Return, the Service discovered that Mrs. Nielsen did not elect to have the Transfer treated as qualified terminable interest property because she never filed a 1993 Gift Tax Return.

24. Because the Transfer did not constitute "qualified terminable interest property" as defined in I.R.C. § 2523(f)(2), the Service could not allow the Gift Marital Deduction provided for under I.R.C. § 2523 and the Transfer was fully taxable.

25. When Mrs. Nielsen died, the full amount of the Transfer was, pursuant to I.R.C. § 2035, required to be reported on line 4 of her Form 706 Estate Tax Return, entitled "Adjusted Taxable Gifts."

26. The decedent failed to report the taxable Transfer on her Estate Tax Return.

27. Instead, the Estate attempted to make an untimely election on a Form 709 Gift Tax Return that was submitted with the estate tax return in April 1995.

28. As a result of including the amount of the Transfer in the gross estate, the Estate incurred an additional tax assessment of $228,904, plus interest. Accordingly, on May 1, 1997,

4

the Service issued a Notice of Deficiency and assessed the unpaid taxes. The Estate has fully paid this amount.

29.  The failure to file the gift tax return and make the QTIP election was the result of an error by Mr. Kriegel, the decedent's accountant, and Mr. Richards, the decedent's estate planner.

30.  After discovering that the decedent had not filed a gift tax return and had failed to elect QTIP treatment for the amount of the Transfer, the personal representative First Security Bank filed a claim with the malpractice carriers of Arlyn Kriegel, the decedent's accountant, and Ralph Richards, the decedent's estate planner, on behalf of the remainder beneficiaries.

31.  The malpractice carriers of Mr. Kriegel and Mr. Richards paid over $300,000, plus costs and attorney's fees, to the remainder beneficiaries, Ms. Casburn and Ms. Eliason, who have now been made whole, and profited, as a result of a claim filed by the personal representative.

32.  Any finding of fact more properly characterized as a conclusion of law is hereby adopted as such.

## PROPOSED CONCLUSIONS OF LAW

1.  The Plaintiff's Form 843 Claim for Refund was properly denied and the Plaintiff is not entitled to a refund of the $281,835.46, plus interest, in additional estate tax.

2.  A determination of tax made by the Commissioner of Internal Revenue carries a presumption of correctness. Welch v. Helvering, 290 U.S. 111, 115 (1933); Affiliated Foods, Inc. v. Commissioner, 154 F.3d 527, 530 (5th Cir. 1998) (the imposition of tax by the Commissioner is presumptively correct therefore the petitioner must shoulder the burden of proving that the tax assessment was improper).

3.  In a tax refund suit, the taxpayer bears the "burden of going forward and the burden

of persuasion." Sara Lee Corp. & Subsidiaries v. United States, 29 Fed. Cl. 330, 334 (1993) (citing Helvering v. Taylor, 293 U.S. 507, 515 (1935)). "In such a suit, plaintiff must first rebut the presumption of correctness associated with any determination made by the Commissioner of Internal Revenue." Sara Lee Corp. & Subsidiaries v. United States, 29 Fed. Cl. 330, 334 (1993) (citing United States v. Janis, 428 U.S. 433, 440-41 (1976)).

4. A plaintiff must do more than prove that some aspect of a tax assessment was incorrect. Janis, 428 U.S. at 440 ("[i]t is not enough for him to demonstrate that the assessment of the tax for which the refund is sought was erroneous in some respects").

5. The taxpayer must come forward with sufficient evidence to disprove the presumption that the denial of her claim for refund by the Commissioner was incorrect. Affiliated Foods, Inc. v. Commissioner, 154 F.3d 527, 530 (5th Cir. 1998); Morowitz v. United States, 15 Cl. Ct. 621, 629 (1988).

6. Critically, "in a refund suit the taxpayer bears the burden of proving the amount she is entitled to recover." Janis, 428 U.S. at 440.

7. The taxpayer bears the burden of proving eligibility for the marital deduction. Estate of Rapp v. Commissioner of Internal Revenue, 140 F.3d 1211, 1215 (9th Cir. 1998).

8. The estate tax is computed in I.R.C. § 2001(b) as a percentage of the sum of 1) the amount of the taxable estate, plus 2) the amount of adjusted taxable gifts.

9. "Taxable gifts" are determined by looking to I.R.C. § 2501, which provides:

(a) Taxable Transfers--
(1) General Rule--A tax, computed as provided in section 2502, is hereby imposed for each calendar year on the transfer of property by gift during each calendar year by an individual, resident, or nonresident.

This tax applies "whether the transfer is in trust or otherwise, whether the property is real or personal, tangible or intangible. I.R.C. § 2511.

10. The gift tax provisions must be broadly construed to effectuate the Congressional intent to "reach all gratuitous transfers of any valuable interest in property." Dickman v. Commissioner, 465 U.S. 330, 334 (1984); Doerr v. United States, 819 F.2d 162, 164(7th Cir. 1987); see Commissioner v. Wemyss, 324 U.S. 303, 306 (1945) ("Congress intended to use the term 'gifts' in its broadest and most comprehensive sense").

11. When one spouse makes a lifetime transfer of a life estate to their spouse, the property is deemed terminable interest property, does not qualify for the marital deduction, and is taxable under I.R.C. § 2523(a) and (b), unless the donor elects to treat the transfer as "qualified" terminable interest property by making a proper election under I.R.C. § 2523(f) on a timely filed gift tax return.

12. To obtain the marital deduction, the donor spouse must elect QTIP treatment of the property on a timely filed gift tax return for the year of the transfer. I.R.C. § 2523(f)(4).

13. I.R.C. § 6019 requires that the donor spouse make the QTIP election on the gift tax return for the year of the transfer.

14. 26 C.F.R. 25.6019-1(a) states that an individual who makes a transfer by gift and desires to apply the marital deduction by treating the property as qualified terminable interest property, "must file a gift tax return on Form 709 for that calendar year."

15. I.R.C. § 6075(b), entitled "Time For Filing Estate and Gift Tax Returns" requires that the gift tax return containing the election **be filed by April 15 of the calendar year following the year of the transfer.**

16. 26 C.F.R. § 25.2523-1(f)4 also states that an election of qualified terminable interest

property "is made on a gift tax return for the calendar year in which the interest is transferred" as prescribed in § 6075(b).

17.  Because the Transfer occurred in August 1993, Ms. Nielsen was required to file a gift tax return on or before April 15, 1994 if she wanted to make a § 2523(f) election.

18.  The marital deduction must be strictly construed. Estate of Wycoff v. Commissioner, 506 F.2d 1144, 1149 (10th Cir. 1974). "The taxpayer must meet every condition of eligibility set forth by Congress...[s]he either fits squarely within the statute in every particular or the deduction is unavailable." Estate of Rinaldi v. United States, 38 Fed.Cl. 349-350 (Tax Ct. 1997).

19.  The deceased failed to timely file the Form 709 gift tax return. Because she did not file a 1993 gift tax return, she did not make the required election to treat the Transfer as a QTIP gift, and when she died she had an outstanding $228,904 liability for "adjusted taxable gifts" to be included on her estate tax return. Estate of John Higgins v. Commissioner, 91 T.C. 61, 68 (T.C. 1988)(as with other elective provisions, a clear and timely manifestation to the government of the taxpayer's election is required ); see generally, Young v. Commissioner, 783 F.2d 1201, 1206 (5th Cir. 1986) (unequivocal choice to elect QTIP treatment must be made on proper return); I.R.C. § 6075(b); 26 C.F.R. § 301-2523(f)4.

20.  A untimely gift tax return will only be accepted if the taxpayer has either received approval to late file her income tax return or has requested and received prior approval form the Service pursuant to 26 C.F.R. § 301.9100.

21.  The deceased did not have approval to file her 1993 income or gift tax returns after April 15, 1994. The instructions on the Form 709 Gift Tax Return specifically state that "you may not make the election on a late-filed Form 709."

8

22.  I.R.C. § 2523 does not permit late "protective" QTIP elections to be made. 26 C.F.R. § 301.9100 permits the Commissioner to accept late returns if the taxpayer requests approval prior to the due date for the return and, when the late return is filed, indicates on the face of the late return that it is filed pursuant to 26 C.F.R. § 301.9100. Neither the decedent nor the Estate requested such approval nor did the "pro-forma" 1993 gift tax return sent to the Service in April 1995 indicate that it was being late filed under § 301.9100. Thus, the attempted late filing of the Form 709 was properly denied.

23.  The validity of the Lifetime Trust and the property interests it created exist wholly independent of the tax treatment of those interests. Gregory v. Helvering, 293 U.S. 465, 469-470 (1935) (substance of transaction governs over the form of the transaction); Davenport v. Commissioner, 1999 WL 730956; Heyen v United States, 945 F.2d 359, 362 (10th Cir. 1991).

24.  The plaintiff, the beneficiaries, and the Service have all recognized the Lifetime Trust as a valid, operable trust, despite the failed QTIP election, and the plaintiff cannot reasonably argue otherwise. Burford v. Commissioner, 1985 WL 14703 *4 (Tax Ct. 1985)(fact that taxpayer funded irrevocable trust with $600,000 and filed gift tax return shows he thought the transfer was a taxable gift and prevents him from contending otherwise).

25.  The lack of consideration paid for the property transferred, not the donor's intent underlies the basis of the gift tax. 26 C.F.R. § 25.2511-1(g)(1); Commissioner v. Wemyss, 324 U.S. 303, 306 (1945); Davenport, at 4; Fehrs v. United States, 223 Ct.Cl. 488, 259 (Ct. Cl. 1980).

26.  The essence of a gift by trust is the abandonment of control over the property put in the trust. Smith v. Shaughnessy, 318 U.S. 176 (1943); Robinette v. Helvering, 318 U.S. 176 (1943); Estate of Vak v. Commissioner, 973 F.2d 1409, 1414 (8th Cir. 1992) (gift tax arose when donor

9

relinquished ability to revest trust corpus in himself).

27. 26 C.F.R. § 25-2511-2(f) states that "the relinquishment or termination of a power to change the beneficiaries of transferred property... is regarded as the event that completes the gift and causes the tax to apply." Here, on August 23, 1993, Ms. Nielsen relinquished dominion and control over the $550,000 by delivering it to the trustee of the irrevocable Lifetime Trust. Article IV of the Lifetime Trust document states that she intended to "relinquish absolutely and forever all possession or enjoyment of, or right to the trust property, or the income therefrom...and... she shall have no right or power ...to alter, amend, revoke, or terminate the trust."

28. The fact that the marital deduction does not apply to the Transfer does not affect the application of the gift tax because the decedent undisputably relinquished all rights to the property. 26 C.F.R. § 25-2511-2(f); Commissioner v. Wemyss, 324 U.S. 303.

29. The decedent's donative intent is not relevant to the determination of whether the Transfer was complete for gift tax purposes. 26 C.F.R. § 25.2511-1(g)(1) specifically states that "[d]onative intent on the part of the transferor is not an essential element in the application of the gift tax to the transfer."[1] Estate of Lang v. Commissioner, 613 F.2d 770, 773 (9th Cir. 1980) (essence of a taxable gift by trust is the abandonment of control over the property, donative intent is not essential to finding a taxable gift); Fehrs v. United States, 620 F.2d 255, 259 (Ct. Claims 1980).

30. The essence of a gift by trust is the abandonment of control over the property put in the trust. Smith v. Shaughnessy, 318 U.S. 176 (1943); Estate of Vak v. Commissioner, 1991 WL 194042.

31. 26 C.F.R. § 25.2511-2(a) entitled "Cessation of donor's dominion and control" states

10

that the gift tax applies to transfers:

> **As to any property**, or part thereof or interest therein, **of which the donor has so parted with dominion and control** as to leave him no power to change its disposition, whether for his benefit or for the benefit of another, **the gift is complete** [emphasis added].

On August 23, 1993, Ms. Nielsen relinquished dominion and control over the $550,000 upon delivering it to the irrevocable Lifetime Trust

32. Under 26 C.F.R. § 25.2511-2(a), (f), and I.R.C. § 2501 a gift tax liability arose upon the decedent's funding the Irrevocable Trust at which time she abandoned control over the corpus. Commissioner v. Wemyss, 324 U.S. 303, 306 (1945); Davenport v. Commissioner, 1999 WL 730956 at 9 (10th Cir. 1999); Robinette v. Helvering, 318 U.S. 176 (1943); Estate of Vak v. Commissioner, 973 at 1414.

33. The state law of New Mexico is relevant "only to the extent that certain statutory provisions of the federal revenue laws make their application dependent on state law." Davenport, at 9. Federal law determines whether and to what extent property interests will be taxed. Davenport, at 4; United States v. Irvine, 511 U.S. 224, 238-239 (1994).

34. The Transfer was complete under the state law of New Mexico. Espinosa v. Pertitis, 373 P.2d 820, 822 (N.M. 1962).

35. The Lifetime Trust was "executed" and "funded" prior to the Grantor's death, and will be completed upon John Nielsen's death. Because it was "created and funded," the amendments to the Revocable Trust are not applicable and do not determine how the $550,000 should be treated.

36. No provision of the trust document prevents the trust from obtaining QTIP treatment. The failure of the decedent to elect QTIP treatment on a timely filed gift tax return, an act wholly

11

separate from the trust document, is what prevented the transfer of terminable interest property from becoming "qualified" under the Code.

37. The state court action filed by the Plaintiff was ex-parte in nature, intended to affect the federal tax treatment of the Transfer without joining the United States as a party, and is not binding on this Court. Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456 (congress did not intend state court actions to have determinative effect on federal tax questions); Estate of Rapp v. Commissioner of Internal Revenue, 140 F.3d 1211, 1215-16 (9th Cir. 1998) (only a state's highest court can make a ruling on state law that binds federal courts); Estate of Kraus v. Commissioner of Internal Revenue, 875 F.2d 597, 600-01 (7th Cir. 1989) (state trial court's reformation of will is not binding on federal courts); Estate of Selby v. United States, 726 F.2d 643, 646-48 (10th Cir. 1984). Such a determination cannot be considered the "law of the state."

38. The "reasonable cause" doctrine does not excuse the decedent's failure to elect QTIP treatment on a timely gift tax return. I.R.C. § 6651; 26 C.F.R. § 301.6651 (doctrine can only be used to seek abatement of a penalty assessed because of failure to timely file a return).

39. Assessment of the additional estate taxes does not violate the Constitution. Martinez v. Internal Revenue Service, 744 F.2d 71, 72 (10th cir. 1984)("post-collection judicial review afforded by the [tax] refund suit satisfies the due process requirements of the Constitution); Regan v. Taxation with Representation of Washington, 461 U.S. 540, 547 (1983)(strict filing deadlines are required for tax administration).; Axtell v. United States, 860 F.Supp. 795, 801-02 (D. Wyoming 1994).

40. Plaintiff has not carried its burden to rebut the presumption of correctness that attaches to the Commissioner's determination to disallow the Claim for Refund.

41. Plaintiff has not met its burden of proving it is entitled to a refund.

42. Plaintiff is not entitled to attorney's fees or costs of litigation.

43. Plaintiff's Complaint shall be dismissed with prejudice.

44. Any conclusion of law more properly characterized as a finding of fact is hereby adopted as such.

> NORMAN BAY
> United States Attorney
>
> By: *[signature]*
> JONATHAN R. WILLIAMS
> Trial Attorney, Tax Division
> Bar No. 178810-Florida
> Department of Justice
> Maxus Energy Tower
> 717 N. Harwood, Suite 400
> Dallas, Texas 75201
> (214) 880-9767
> (214) 880-9742 (FAX)
>
> ATTORNEYS FOR UNITED STATES

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing United States' Proposed Findings of Fact and Conclusions of Law has been made on January 16, 2001, by mailing a copy thereof to:

Timothy Garcia
1322 Paseo de Peralta
Santa Fe, NM 87501
505- 820-6107

*[signature]*
JONATHAN R. WILLIAMS