IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FIRST SECURITY BANK OF
SOUTHERN NEW MEXICO, N.A.
Personal Representative of the
ESTATE OF MARY KATE NIELSON, Deceased

     Plaintiff,

vs.                                                                             No. CIV 99-1298 MV/DJS

UNITED STATES OF AMERICA,

     Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court for consideration of Plaintiff's motion for summary judgment filed September 21, 2000 **[Doc. No. 25]** and Defendant's cross motion for summary judgment filed November 9, 2000 **[Doc. No. 27]**. The Court, having considered the motions, responses, relevant law, and being otherwise fully advised, finds that Plaintiff's motion for summary judgment is well-taken and will be **GRANTED**. Defendant's cross motion for summary judgment will be **DENIED**.

### BACKGROUND

The following are the material undisputed facts.[1] On September 30, 1977 Decedent Mary Kate Nielson (hereinafter "Decedent") prepared and signed the Mary Kate Marquess Revocable Trust (hereinafter "the Revocable Trust"), the income of which was to be paid to Decedent during

---

[1] The Court accepts as undisputed all facts admitted by both parties and all facts for which no competent contrary evidence has been presented by the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

her life and the corpus of which was to be distributed to her brother, maid, and two daughters upon her death. In 1979, Decedent married John Nielsen. On July 12, 1979, Decedent amended the trust to add John Nielsen as a beneficiary upon her death. On March 18, 1981 Decedent executed a pour over will, devising her residuary estate to Plaintiff as trustee, to be added to the principal of the Revocable Trust. On the same date, Decedent amended the trust again, increasing the gifts to some of the trust beneficiaries and providing that John Nielsen would have the right to reside at the marital residence for one year after Decedent's death.

On February 4, 1988, Decedent executed the third amendment to the Revocable Trust, adding a testamentary qualified terminable interest property ("QTIP") trust as part of the dispositive provisions of the Revocable Trust and requiring the trustee of the Revocable Trust to distribute $600,000 to the testamentary QTIP trust to qualify as qualified terminable interest property.

On August 23, 1993, Decedent executed the fourth amendment to the Revocable Trust (hereinafter the "Fourth Amendment"). The Fourth Amendment included the following provisions:

> "The Grantor declares that simultaneously with execution of this amendment, she has also executed the Mary Kate Nielsen Lifetime QTIP Trust, which is an irrevocable QTIP trust for the benefit of her spouse John T. Nielsen. The Granter therefore does hereby revoke the provisions of [] the Third Amendment . . . which created a QTIP trust for the benefit of the Grantor's husband John T. Nielsen and other provisions of said trust as amended which pertain to the QTIP Trust to be created thereunder for the benefit of the Grantor's husband John T. Nielsen."

> "It is the Grantor's intention that the revocation of the provisions of the [] Revocable Trust creating a QTIP Trust for the benefit of her spouse made hereby is conditioned upon and subject to completion of the execution, completion and funding of the Mary Kate Nielsen Lifetime QTIP Trust

2

>executed the same date."

>"If for some reason such trust shall not be executed, completed or funded at the time of the Grantor's death, then the provisions hereof pertaining to the creation of the QTIP Trust for the benefit of the Grantor's surviving spouse John T. Nielsen shall be revived but only upon the condition and in the circumstance where the Mary Kate Nielsen Lifetime QTIP Trust for John T. Nielsen has not been created, and/or funded."

Also on August 23, 1993, Decedent executed the Mary Kate Nielsen Lifetime QTIP Trust (hereinafter "the Irrevocable Trust"), providing that "[i]t is the Grantor's intention that property transferred to this trust be construed as 'qualified terminable interest property' . . . . Any provision(s) of this trust which is contrary to the intent to have the trust qualify as QTIP under the Internal Revenue Code . . . shall be null and void."

Thus, it is undisputed that in executing the Fourth Amendment, Decedent intended to create the Mary Kate Nielsen Lifetime QTIP Trust and to revoke the Revocable Trust; that she intended for the transferred assets to be construed as qualified terminable interest property; that the revocation of the Revocable Trust was conditioned upon "the execution, completion and funding" of the Irrevocable Trust; and that if the Irrevocable Trust, for whatever reason, was not executed, completed, or funded at the time of Decedent's death, the Revocable Trust would be revived. On the same date, Decedent transferred $550,000 to the Trustee of the Irrevocable Trust. This transfer, and the potential federal tax consequences thereof, forms the basis of the dispute.

Decedent filed a Form 709 Gift Tax Return, pursuant to 26 U.S.C. § 2523(f), claiming a marital deduction for the 1993 transfer; however, it is undisputed that Decedent *did not* file this document before April 15, 1994. Decedent died of a brain tumor on July 21, 1994. After Decedent's death, Decedent's Estate filed a Form 706 Estate Tax Return pursuant to under 28

3

U.S.C. § 2056(b), making a protective QTIP election and claiming a marital deduction for the assets transferred into the Revocable Trust.

The Government determined that Decedent did not file a timely 1993 Gift Tax Return; that the $550,000 transfer did not constitute "qualified terminable interest property;" that the marital deduction could not be applied to the transfer; and that, therefore, the $550,000 was a fully taxable gift. On May 1, 1997, the Government issued a Notice of Deficiency in the amount of $228,904. The Estate paid that amount, plus interest, and then filed a Claim for Refund, which the Government denied.

Decedent's Estate petitioned the New Mexico District Court for a declaratory judgment regarding the validity, under New Mexico law, of the 1993 transfer. On August 18, 2000, the New Mexico District Court, Third Judicial District, entered a declaratory judgment ruling that the 1993 transfer was incomplete, invalid and void under New Mexico law. Plaintiff, Personal Representative of Decedent's Estate, filed this action challenging the Government's determination. Plaintiff now seeks summary judgment. The Government has filed a cross motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d

995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## DISCUSSION

**I.  Applicable Law**

The Government argues that this case is governed entirely by the Internal Revenue Code. The Code imposes a gift tax on donors for taxable gifts or transfers. *See* 26 U.S.C. § 2501 *et*

*seq.*[2]  By regulation, a gift is "complete," and therefore taxable, "as to any property, or part thereof or interest therein, of which the owner has so parted with dominion and control as to leave him no power to change its disposition."  26 C.F.R. § 25.2511-2(b).  The Government maintains that when the Decedent executed the Fourth Amendment, she relinquished all power to dispose of the trust corpus, thereby parting with dominion and control over the assets transferred.  Thus, the Government argues, the 1993 transfer constituted a taxable "gift."

The Code allows a marital deduction for inter-vivos transfers of terminable interest property between spouses where the donor spouse "qualifies" the transfer.  *See* 26 U.S.C. § 2523 *et seq.*  Once qualified, the property transferred becomes "qualified terminable interest property" and the donor can claim the marital deduction.  In order to claim the deduction, the donor spouse is required to make an election "on or before the date prescribed by section 6075(b)," 26 U.S.C. § 2523(f)(4)(A), in this case, on or before April 14, 1994.  The Government has determined that because the Decedent failed to make the necessary election on or before April 14, 1994, the 1993 transfer cannot be considered for QTIP treatment and that, accordingly, the Estate was not entitled to claim the marital deduction.

Plaintiff argues, on the other hand, that the Court must look to state law to determine the nature of the property interest at stake.  *See Estate of Dillingham v. Commissioner*, 903 F.2d 760, 763 (10th Cir. 1990) (citing *Burnet v. Harmel*, 287 U.S. 103, 110 (1932)).  Plaintiff maintains that the 1993 transfer was invalid as a matter of state law, which was the essence of the New Mexico District Court's ruling, and that, therefore, the Irrevocable Trust failed.  Plaintiff argues

---

[2]"A tax, computed as provided in section 2502, is hereby imposed for each calendar year on the transfer of property by gift during such calendar year by any individual, resident or nonresident."  26 U.S.C. § 2501(a)(1).

6

further that because revocation of the Revocable Trust was conditioned on the creation of the Irrevocable Trust, and because the Irrevocable Trust failed, the Revocable Trust was revived by the express terms of the Fourth Amendment.

Therefore, Plaintiff maintains, the corpus of the failed Irrevocable Trust returned to the estate, which then passed through the residuary clause of the pour over will into the Revocable Trust. The Revocable Trust was indisputably established as a QTIP trust for which a protective QTIP election was made and for which a marital deduction was claimed on Decedent's Estate Tax Return. According to Plaintiff, then, the 1993 transfer was not a taxable gift, because it was not a valid gift under state law, the QTIP Trust created under the Revocable Trust qualified for the marital deduction and reduced the estate taxes by an amount equal to the additional tax paid as a result of the Government's determination, and the Estate is now entitled to a refund of that amount. This case thus presents the Court with an issue that the federal courts have struggled with for decades, namely, "[w]hat weight should be given a state court's determination of an issue of state law when that decision affects the federal fisc." *Estate of Selby v. United States*, 726 F.2d 643, 646 (10th Cir. 1984).

The general rule is that federal courts look to state law to determine the nature of a property interest and to federal tax law to determine the method by which the property is to be taxed. *Burnet*, 287 U.S. at 110 ("state law creates legal interests but the federal statute determines when and how they shall be taxed"). As the Government correctly notes, the Tenth Circuit recently stated that "in federal taxation cases, state law controls only to the extent that certain statutory provisions of the federal revenue laws make their application dependent on state law." *Estate of Davenport v. Commissioner*, 184 F.3d 1176, 1182 (10th Cir. 1999) (citing *United*

7

*States v. Irvine*, 511 U.S. 224, 238-39 (1994)). Nonetheless, the Tenth Circuit went on in *Davenport* to employ state law "in analyzing the nature of [the Decedent's] ownership interest in the [property] and in determining whether she completed a gift of the [property] to her [heirs]." *Id.* It is clear, therefore, that under controlling Supreme Court and Circuit precedent, federal courts must look to state law in order to determine the nature of a property interest before applying federal tax law to determine the method by which the property is to be taxed.

Thus, the Court finds that it must look to New Mexico law in order to determine whether the 1993 transfer was properly classified as a taxable gift. The Court is not, however, bound by the New Mexico District Court's ruling that the 1993 transfer failed as a matter of state law. The Supreme Court has held explicitly that "when the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should a fortiori not be controlling." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967). Rather, where "the underlying substantive rule involved is based on state law," and there is no decision of the state's highest court, "then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Id.* The New Mexico District Court, Third Judicial District, is a trial court of general jurisdiction. Thus, applying *Bosch*, the Court must give "proper regard" to the New Mexico District Court's ruling, and apply the correct state law. *Estate of Selby*, 726 F.2d at 646.

## II.     The Nature of the 1993 Transfer and the Federal Tax Consequences

In New Mexico, a valid gift must contain the following: (1) property subject to gift; (2) a donor competent to make the gift; (3) a donation intent on the part of the donor, not induced by force or fraud; (4) delivery to the donee; (5) acceptance by a competent donee; and (6) a present

gift fully executed.  *See Lusk v. Daugherty*, 61 N.M. 196, 199, 297 P.2d 333, 335 (1956); *Espinosa v. Petritis*, 70 N.M. 327, 373 P.2d 820 (1962).

The Court finds that the donor's intentions in this matter were set forth in the estate planning documents executed on August 23, 1993.  The Decedent explicitly stated that it was her intention "that the revocation of the provisions of the [] Revocable Trust creating a QTIP Trust for the benefit of her spouse made hereby is conditioned upon and subject to completion of the execution, completion and funding of the [Irrevocable] Trust executed the same date" and that if "for some reason such trust shall not be executed, completed or funded at the time of the Grantor's death, then the provisions hereof pertaining to the creation of the QTIP Trust for the benefit of the Grantor's surviving spouse John  T. Nielsen shall be revived."  She also explicitly stated that it was her intent "that property transferred to [the Irrevocable] trust be construed as 'qualified terminable interest property' . . . within the meaning of Section 2423(f) of the Internal Revenue Code."  Thus, it is apparent that the Decedent intended that the gift be conditioned on certain other factors, namely, on the completion, execution and funding of the Irrevocable Trust and on the treatment of the transferred assets as qualified terminable interest property.  The New Mexico Supreme Court has held that where a gift is conditional, there is no true donative intent and, thus, no valid gift.  *See Ohl v. Ohl*, 97 N.M. 175, 177, 637 P.2d 1230, 1232 (1982).

The Court also finds that there was no "present gift fully executed."  As explained above, the Decedent intended that the Irrevocable Trust be conditioned on the treatment of the transferred assets as qualified terminable interest property and that the revocation of the Revocable Trust be conditioned on the completion and execution of the Irrevocable Trust.

9

Because the Decedent did not file a timely Form 709 Gift Tax Return,[3] the Government determined that the Irrevocable Trust could not qualify as a QTIP trust.  Because the creation of the Irrevocable Trust was expressly conditioned on treatment of the transferred assets as qualified terminable interest property, the Court finds that the New Mexico District Court properly concluded that the "completion of the 1993 Transfer to the [Irrevocable] Trust has not occurred and cannot occur to fulfill the Donor's intention."  Accordingly, the Court agrees with the state court that "the 1993 Transfer of $550,000 to the [Irrevocable] Trust is incomplete, invalid and void under New Mexico law."

Because the transfer failed as a matter of state law, and because the express conditions for creation of the Irrevocable Trust were not met, the Irrevocable Trust cannot be said to have been "executed, completed, and funded."  Therefore, the Revocable Trust was revived by the express provisions of the Fourth Amendment.  The corpus of the Irrevocable Trust returned to the Decedent's estate, and then passed through the residuary clause of the pour over will to the Revocable Trust.  The marital deduction as set forth in the protective election filed by the Plaintiff on the Form 706 Estate Tax Return was proper and should have been allowed.  Plaintiff is entitled to a refund of taxes and interest paid.

## CONCLUSION

In sum, the Court finds that there are no material facts in dispute.  The parties agree, or admit, that the Decedent intended to create an Irrevocable QTIP trust when she transferred

---

[3]It is undisputed that the Decedent had reached the final stages of her terminal brain tumor by the Spring of 1994.  Plaintiff is correct, however, that the reason for Decedent's failure to file a timely 1993 return is irrelevant.  Because it has reached its conclusion on other grounds, the Court declines to address Plaintiff's equity and reasonable cause arguments.

$550,000 to the Trustee in 1993 and that she failed to file a timely Form 709 Gift Tax Return for 1993.  Their only disagreement centers on the legal consequences that flow from those facts.  The Court finds that Plaintiff's interpretation of the law is correct and that Plaintiff is therefore entitled to judgment as a matter of law.

    **IT IS THEREFORE ORDERED** that Plaintiff's motion for Summary Judgment is hereby **GRANTED** and judgment is hereby awarded in the amount of $281,835.46; Defendant's Cross Motion for Summary Judgment is hereby **DENIED**.

                                             _____
                                             Martha Vázquez
                                             U. S. District Judge

<u>Attorney for Plaintiff</u>
       Timothy L. Garcia

<u>Attorney for Defendant</u>
       Jonathan R. Williams